UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLEN NELSON,

    Plaintiff,

v.

GRAND TRUNK WESTERN
RAILROAD COMPANY,

    Defendant.

Case No. 18-cv-13393
Hon. Matthew F. Leitman

_____/

### ORDER DENYING IN PART DEFENDANT'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION (ECF No. 40) AND ORDERING PLAINTIFF TO RESPOND TO MOTION IN PART

In this action, Plaintiff Glen Nelson brings a claim against Defendant Grand Trunk Western Railroad Company ("Grand Trunk") under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (the "FELA"). Nelson seeks to recover for a back injury that he suffered while working to repair a defective air brake hose on a Grand Trunk train that had come to a stop in the middle of a regularly scheduled trip.

Following the close of discovery, both parties moved for summary judgment, and Nelson filed a motion in limine to exclude certain Grand Trunk employees from testifying as expert witnesses. (*See* Mots., ECF Nos. 20, 21, 23.) The Court addressed these motions in an Opinion and Order dated June 25, 2020. (*See* Op. and Order, ECF No. 37.) First, the Court granted Nelson's motion for summary

1

judgment in part.  The Court held that Nelson was entitled to judgment as a matter of law on the negligence element of his FELA claim because Nelson had established that Grand Trunk violated the Federal Safety Appliance Act, 49 U.S.C. § 20302 (the "FSAA").  In support of that ruling, the Court determined that at the time of Nelson's injury, the train in question had come to a stop on the "main track" at Control Point Rodney, a stop along the train's route.  Second, the Court denied Grand Trunk's motion for summary judgment.  Third, the Court terminated Nelson's motion to exclude Grand Trunk's proposed expert testimony.  The Court concluded that in light of its determination that Nelson had established the negligence element of his FELA claim as a matter of law, Grand Trunk's proposed expert testimony was no longer relevant.

Grand Trunk has now filed a timely motion for clarification and/or reconsideration. (*See* Mot., ECF No. 40.)  Grand Trunk makes two arguments. First, Grand Trunk contends that the Court erred when it concluded that the train at issue was located on the "main track" at Control Point Rodney at the time of Nelson's injury.  Grand Trunk insists that there is "[a] material dispute of fact [] regarding which track the subject railcar occupied at the time of the relevant events." (*Id.*, PageID.1507.)  And Grand Trunk says that that factual dispute precludes summary judgment in favor of Nelson on the negligence element of his FELA claim. (*See id.*)  Second, Grand Trunk argues that the Court erred when it held that the proposed

2

testimony of Grand Trunk's expert witnesses was not relevant to any of the remaining disputed elements of Nelson's FELA claim. (*See id.*, PageID.1501-1503.) Grand Trunk asserts that that testimony remains relevant to the causation element of Nelson's claim. (*See id.*)

For the reasons that follow, the Court **DENIES** the motion in part and **ORDERS** Nelson to respond to the motion in part.

# I

Motions for reconsideration in this Court are governed by Local Rule 7.1(h). Under that rule, "[t]he movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(h)(3). In addition, "[g]enerally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." *Id.* Finally, a motion for reconsideration is not a vehicle to rehash old arguments, or to proffer new arguments or evidence that the movant could have presented earlier. *See Sault Ste. Marie v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998).

II

The Court first addresses Grand Trunk's argument that the Court erred when it concluded that the train was on the "main track" at Control Point Rodney at the time of Nelson's injury. Grand Trunk argues that there is a material factual dispute as to whether the train was on the "main track" or a sidetrack called the "industrial track." The Court rejects this argument for both procedural and substantive reasons.

A

As an initial matter, Grand Trunk may not now claim that the Court erred when it failed to recognize a factual dispute concerning the location of the train because Grand Trunk's argument rests in large part upon evidence that Grand Trunk failed to properly put before the Court. As described in detail below, in the motion for clarification and/or reconsideration, Grand Trunk relies heavily upon the deposition testimony of its employee Jason Sukup. (*See* Mot., ECF No. 40, PageID.1498-1499.) But Grand Trunk did not make that testimony part of the summary judgment record. As Grand Trunk candidly admits, it did not "attach[] Mr. Sukup's deposition transcript" to its motion for summary judgment. (*Id.*, PageID.1498 n.2.) Instead, Grand Trunk attached Sukup's deposition transcript to its response to Nelson's motion in limine. And while counsel for Grand Trunk generally referenced Sukup's testimony during the summary judgment hearing, she did not indicate to the Court that it was contained anywhere in the record, nor did

4

she direct the Court to the location in the record of the particular testimony by Sukup to which she was referring. The Court did not commit error when it failed to search the exhibits to the separate motion in limine for the testimony by Sukup upon which Grand Trunk now relies in opposing summary judgment.

### B

Second (and more importantly), the evidence upon which Grand Trunk relies does not create a material factual dispute as whether the train was located on the "main track" at Control Point Rodney. There simply is no such dispute on the record before the Court. As the Court explained in its Opinion and Order, Grand Trunk's own document – authored by one of its employees, Superintendent Dean Macki – states that the train was located on the "main track at Rodney" at the time of Nelson's injury. (ECF No. 22-5, PageID.567.) Grand Trunk says that three portions of deposition testimony conflict with Macki's statement that the train was on the "main track" and, thus, create a material factual dispute on the location-of-the-train issue. The Court disagrees.

### 1

Grand Trunk first highlights Nelson's testimony that he cannot remember whether the train was on the "main track" or the "industrial track" at the time of his injury. Grand Trunk argues that that testimony conflicts with Macki's statement that the train was on the "main track." It does not. Nelson's lack of memory is not

affirmative evidence that the train was, in fact, on the "industrial track." Indeed, the whole point of Nelson's testimony is that he, personally, several years after his injury, cannot say which track the train was on. That testimony does not conflict with Macki's unequivocal statement at the time of Nelson's injury that the train was on the "main track at Rodney." (*Id.*)

### 2

Grand Trunk next argues that testimony by Grand Trunk employee Jason Sukup indicates that the train could not have been on the "main track" at the time of Nelson's injury. According to Grand Trunk, Sukup testified that "if the [train] was on the main [track]," it would have been blocking the part of that track owned and used by Norfolk Southern Railway. (Mot., ECF No. 40, PageID.1506.) And Grand Trunk insists that if the train was blocking Norfolk Southern's track, "[Sukup] would have received a complaint from Norfolk Southern about the block[ing]." (*Id.*) Grand Trunk then highlights Sukup's testimony that he could not recall receiving a call from Norfolk Southern during the time that Nelson's train was stopped. Grand Trunk thus views Sukup's testimony as some proof that the train was not on the "main track."

This chain of reasoning is flawed in two respects. First, it rests upon pure speculation. Grand Trunk has not directed to the Court to any *evidence* that any Norfolk Southern trains were, in fact, attempting to use the "main track" at Control

Point Rodney during the time that Nelson's train was stopped. Indeed, Grand Trunk has not identified any evidence whatsoever about the frequency or timing of Norfolk Southern rail traffic on the "main track" around the time of Nelson's injury. And the only evidence that the Court could find in the record on that issue indicates that Norfolk Southern used the "main track" at Control Point Rodney at widely varying and irregular intervals. (*See* Nelson Dep. at 60, ECF No. 22-3, PageID.282.) Simply put, Grand Trunk has not presented sufficient evidence to support a finding that Norfolk Southern trains were using or attempting to use the "main track" at Control Point Rodney around the time of Nelson's injury. Accordingly, the alleged absence of a complaint from Norfolk Southern about a blockage of that track says nothing about whether Nelson's train was on the "main track."

Second, Grand Trunk has not accurately characterized Sukup's testimony. Sukup did not testify, as Grand Trunk reports, that Norfolk Southern "would have" called him to complain if Nelson's train had been stopped on the "main track" at Control Point Rodney. (*See* Mot., ECF No. 40, PageID.1506). Instead, he merely testified that Norfolk Southern "could have" called him and his crew to lodge such a complaint. (Sukup Dep. at 30, ECF No. 40-2, PageID.1519.) But there is no evidence in this record as to the practice that Norfolk Southern followed when confronted with blocked tracks at Control Point Rodney. More specifically, there is no evidence that Norfolk Southern would have responded by calling Sukup or his

crew at Grand Trunk's Flat Rock facility. There is not even evidence that Norfolk Southern knew of, or how to contact, Sukup and his crew at Grand Trunk's Flat Rock facility. And there is reason to doubt that Norfolk Southern would have contacted Sukup if it had encountered blocked tracks at Control Point Rodney. Indeed, Sukup testified that he could not ever recall receiving a call from Norfolk Southern about blocked tracks. (*See id.*). For all of these reasons, on this record, it would be further speculation to conclude, as Grand Trunk insists, that Norfolk Southern would have called Sukup and his crew to lodge a complaint about a blockage at Control Point Rodney. For this additional reason, the absence of such a call does not conflict with Macki's clear statement that the train was located on the "main track at Rodney" when Nelson was injured and does not call into question the Court's grant of partial summary judgment.

**3**

Finally, Grand Trunk points to Nelson's testimony that he could not recall receiving a complaint from Norfolk Southern about the "main track" being blocked, and Grand Trunk says that this testimony – like Sukup's testimony to the same effect – suggests that the train was not on the "main track" at Control Point Rodney. (*See* Mot., ECF No. 40, PageID.1502.) For all of the reasons explained above with respect to Grand Trunk's reliance on Sukup's testimony, the Court concludes that

8

Nelson's lack of recollection of a complaint by Norfolk Southern is not any evidence that the train was on the "industrial track" rather than the "main track."

4

The only competent evidence concerning the location of the train at the time of Nelson's injury is Macki's unequivocal statement, made at the time of Nelson's injury, that the train was on the "main track at Rodney." (ECF No. 22-5, PageID.567.) For the reasons explained above, Grand Trunk's arguments that the train could have been on the "industrial track" instead rest upon speculation and inaccurate descriptions of the record. Because there is no material factual dispute as to whether the train was located on the "main track," the Court will not reconsider its decision granting summary judgment in favor of Nelson on the negligence element of his FELA claim.

III

The Court has reviewed Grand Trunk's additional argument that the Court erred when it concluded that the testimony of Grand Trunk's proposed experts was no longer relevant to any issues being presented at trial. The Court concludes that it would benefit from a response by Nelson to this argument. Accordingly, Nelson shall file a response to this portion of Grand Trunk's motion by no later than **July 31, 2020**.

9

## IV

For all of the reasons stated above, **IT IS HEREBY ORDERED** that:

- Grand Trunk's motion for clarification and/or reconsideration (ECF No. 40) is **DENIED** to the extent that it seeks reconsideration of the Court's decision to grant Nelson summary judgment on the negligence element of his FELA claim; and

- Nelson shall file a response to the remainder of Grand Trunk's motion by no later than **July 31, 2020**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: July 15, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 15, 2020, by electronic means and/or ordinary mail.

s/ Holly A. Monda
Case Manager
(810) 341-9764